## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| PARKER WOODHOUSE, a minor child by and through AMBER BROWN, her mother, custodial parent and next friend, | Case No: |
|  | Jury Trial Demanded |
| *Plaintiff*, |  |
| v. |  |
| KEURIG GREEN MOUNTAIN, INC. and KEURIG, INCORPORATED, |  |
| *Defendants*. |  |

## COMPLAINT

Plaintiff Parker Woodhouse ("Plaintiff"), a minor child, by and through Amber Brown, her mother, custodial parent, and next friend, by and through undersigned counsel, hereby submit the following Complaint for Damages and Jury Trial Demand against Defendants KEURIG, INCORPORATED and KEURIG GREEN MOUNTAIN, INC. (collectively referred to as "Defendants"), respectfully showing the following:

1

## I.  NATURE OF CLAIM

1.       Defendants design, manufacture, market, import, distribute and sell a wide-range of consumer coffee makers and related products, including the subject coffee maker, a Keurig MINI Plus Brewing System with Model Number 31.2002.0628797.

2.       This case involves terrible burns to Plaintiff's upper body suffered on August 23, 2014 when Plaintiff was approximately two years old and that were caused by Defendant's defective coffee maker.  To this day, Plaintiff continues to suffer from the injuries caused by Defendants.

3.       Incredibly, Defendants were on notice of the defect which caused Plaintiff's injuries more than four years before she was injured, yet they did nothing to warn her of the dangerous defects in the subject coffee maker.

4.       The subject coffee maker is a Mini Plus Brewing System that has serious and dangerous defects. Said defects caused significant risk of bodily harm and injury to its consumers.

5.       On or about December 23, 2014, Defendants started a recall[1] of its Mini Plus Brewing Systems after receiving *at least 200 reports,* including 90 reports of burn related injuries, of a "burn hazard".   Said "burn hazard" was reported to occur

---

[1] https://www.cpsc.gov/Recalls/2014/keurig-recalls-mini-plus-brewing-systems, last visited 2/12/2024.

as a result of pressurized water overheating during the brewing process, causing it to spray out of the machine and burn consumers—just like it did to Plaintiff.

6.      Defendants knew or should have known of these defects, but have nevertheless put profit ahead of safety by continuing to sell its coffee makers to consumers, and failed to warn said consumers of the serious risks posed by the defects. Nevertheless, Defendants delayed recalling its coffee makers until on or about December 23, 2014, and only after the Consumer Products Safety Commission ("CPSC") became involved.

7.      Defendants ignored and/or concealed their knowledge of these defects in its coffee makers from the Plaintiff in this case, as well as the public in general, in order to continue generating a profit from the sale of said coffee makers, demonstrating a callous, reckless, willful, depraved indifference to the health, safety and welfare of Plaintiff and others like her.

8.      As a direct and proximate result of Defendants' collective conduct, Plaintiff incurred significant and painful bodily injuries, medical expenses, physical pain, mental anguish, and diminished enjoyment of life. The subject incident giving rise to this lawsuit occurred in Cobb County, Georgia, and this case is brought under the substantive product liability and negligence laws of the State of Georgia.

## II. PLAINTIFF PARKER WOODHOUSE

9.      Plaintiff is a minor citizen of the State of Georgia, where she resides with her custodial parent and mother, Amber Brown who is also a Georgia citizen.

10.     Plaintiff's family purchased new a Keurig MINI Plus Brewing System with Model Number 31.2002.0628797.

11.     On or about August 23, 2014, Amber Brown was making coffee at her residence and Plaintiff, then approximately two years old, was standing near the counter where Amber Brown was brewing coffee using the Keurig MINI Plus Brewing System with Model Number 31.2002.0628797.

12.     During the brewing cycle, extremely hot liquid (believed to be water) sprayed uncontrollably from the Keurig MINI Plus Brewing System with Model Number 31.2002.0628797 onto Plaintiff's chest, upper abdomen, and shoulder, causing severe burns and blisters.

13.     Prior to the incident, the subject coffee maker was in Plaintiff's mother's possession and had not been in any way modified, altered, or repaired and at the time of the incident was in the same condition as it was when it was removed from Defendants' packaging.

14.     The incident described above occurred at Plaintiff's then residence located in Cobb County, Georgia.

### III.    THE DEFENDANTS

15.     Defendants design, manufacture, market, import, distribute and sell a wide range of consumer coffee makers and related products.

16.     Defendant Keurig, Incorporated is a Delaware corporation doing business in all fifty states, including Georgia, and deriving substantial revenue from ongoing and continuous sales of its products (including but not limited to the products at-issue in this case) in the State of Georgia, with its principal place of business located at 101 Edgewater Drive, Wakefield, Massachusetts 01880. Defendant Keurig, Incorporated also maintains a registered agent for service of process in the State of Delaware, National Registered Agents, Inc., located at 1209 Orange Street, Wilmington, Delaware 19801, where Defendant Keurig, Incorporated may be served with legal process in this case.

17.     Defendant Keurig Incorporated is a Delaware and Massachusetts citizen for purposes of diversity jurisdiction.

18.     Defendant Keurig Green Mountain, Inc. is a Delaware corporation doing business in all fifty states, including Georgia, and deriving substantial revenue from ongoing and continuous sales of its products (including but not limited to the products at-issue in this case) in the State of Georgia, with its principal place of business located at 6425 Hall of Fame Lane, Frisco, TX, 75034. Defendant Keurig Green Mountain, Inc. also maintains a registered agent for service of process in the

State of Georgia, Coleman, Chambers & Rogers, LLP, located at 1370 Thompson Bridge Road, Suite 300, Gainesville, Hall County, Georgia 30501, where Defendant Keurig Green Mountain, Inc. may be served with legal process in this case.

19.     Defendant Keurig Green Mountain, Inc. is a Delaware and Texas citizen for purposes of diversity jurisdiction.

### IV.     JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

21.     Venue is proper in the United States District Court for the Northern District of Georgia, Atlanta Division, pursuant to 28 U.S.C. §§ 90(a)(2) and 1391 and LR 3.1(B)(3), N.D.GA., because a substantial part of the events, acts and/or omissions giving rise to the claim and Plaintiff's injuries and other damages occurred within Cobb County, and because the Defendants regularly conduct business in this District and Division, including the promotion, sale and distribution of the subject Mini Plus Brewing System and other similar models of Brewing Systems and/or coffee makers, among other consumer goods.

22.     The Defendants knew at all relevant times that its products were (and are) being sold in the State of Georgia, for use by consumers in Georgia, and its

product caused harm to Plaintiff in the State of Georgia. At all relevant times, the Defendants were (and are) actively involved in the design, manufacture, promotion and sale of the subject Mini Plus Brewing System and/or coffee makers (and other similar models), which failed during foreseeable use and caused Plaintiff's injuries and damages. At all relevant times, the Defendants promoted, via television, internet and otherwise, the subject Mini Plus Brewing System and coffee maker (and other similar models) to be sold in all fifty states, including specifically in the State of Georgia. This Court, thus, has personal jurisdiction over the Defendants because of its continuous and systematic business contacts with the State of Georgia and because its product sold in Georgia caused harm in Georgia to Georgia citizens and residents.

## V. GENERAL FACTUAL BACKGROUND

23.     Defendants are engaged in the business of designing, manufacturing, warranting, marketing, importing, distributing and selling the coffee makers at issue in this litigation.

24.     On or about December 23, 2014, Defendants started a recall[2] of its Mini Plus Brewing Systems after receiving ***at least 200 reports,*** including 90 reports of burn related injuries, of a "burn hazard".

---

[2] https://www.cpsc.gov/Recalls/2014/keurig-recalls-mini-plus-brewing-systems, last visited 2/12/2024.

25.     On or about February 15, 2017, Defendant Keurig Green Mountain, Inc. settled a case brought against it by the Consumer Product Safety Commission ("CPSC") alleging it of knowingly failing to report defects in the subject coffee maker. [3]  The CPSC went further in its statement of settlement noting that it has "serious reservations about whether the amount will have any meaningful deterrent effect on Keurig…."[4]

26.     Beginning as early as February 2010, some five years prior to when Plaintiff was injured by Defendants' defective coffee maker, Defendants received approximately 200 reports of "hot water and coffee spewing out of" the subject coffee maker.[5]

27.     Incredibly, the "alarming incident-to-injury rate" was approximately 50%, meaning that one half of those who complained of the defect to Defendants were injured.[6]

28.     It was not until November 24, 2014, more than four years after Defendants began receiving injury reports, did Defendants notify the CPSC.[7]

---

[3] *See* Exhibit A.
[4] *Id*.
[5] *Id*.
[6] *Id*.
[7] *Id*.

29.     Said "burn hazard" was reported to occur as a result of pressurized water overheating during the brewing process, causing it to spray out of the machine and burn consumers—just like it did to Plaintiff.

30.     To that same end, Defendants' warnings about this "burn hazard" are misleading and inadequate. They do not meaningfully address the risks of serious injury, and they do not tell users how to avoid those risks.

31.     The User Guide warns that the consumer should not lift the handle or open the K-Cup Pack Assembly Housing "during the brewing process." *See* below for a relevant portion of the Keurig K-Cup K10 MINI Plus Owner's Manual, at p. 3:

**CAUTION:** There is extremely hot water in the K-Cup® Pack Holder during the brew process. To avoid risk of injury, do not lift the Handle or open the K-Cup® Pack Assembly Housing during the brewing process.

32.     However, there is no warning, or even mention, of the possibility that the superheated water can be forcibly ejected ***after*** the brew process is complete, creating the risk that a consumer will be severely burned when they open the lid of their Keurig. The absence of such a warning is simply inexcusable.

33.     By reason of the foregoing acts or omissions, Plaintiff's family used the coffee maker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of brewing coffee.

34.    Plaintiff's family used the coffee maker for its intended purpose of preparing beverages for the Plaintiff's family use and did so in a manner that was reasonable and foreseeable by the Defendants.

35.    However, the aforementioned coffee maker was defectively and negligently designed and/or manufactured by the Defendants in that it failed to properly function as to prevent and/or warn of the possibility that the super-heated water can be forcibly ejected *after* the brew process is complete—placing the Plaintiff, her family, and other similar consumers in danger while using the coffee makers.

36.    Defendants' coffee makers possess defects that make them unreasonably dangerous for their intended use by consumers because of the possibility that the super-heated water can be forcibly ejected *after* the brew process is complete.

37.    Further, Defendants' representations regarding the coffee makers (and other similar models) are not just misleading, they are flatly wrong, and put innocent consumers like Plaintiff directly in harm's way.

38.    Economical, safer alternative designs were available that could have prevented the coffee makers from forcibly ejecting water after the completion of the brew process.

39.     Defendants knew or should have known that its coffee makers possessed defects that pose a serious safety risk to Plaintiff and the public. Specifically, Defendants delayed recalling its coffee makers until on or about December 23, 2014, and only after the CPSC became involved.

40.     Nevertheless, Defendants continued to ignore and/or conceal their knowledge of the coffee makers' defects from the general public and continues to generate a substantial profit from the sale of their coffee makers, demonstrating a callous, reckless, willful, depraved indifference to the health, safety and welfare of Plaintiff and others like her.

41.     As a direct and proximate result of Defendants' intentional concealment of such defects, their failure to warn consumers of such defects, their negligent misrepresentations, and their negligent design of such products, Plaintiff used an unreasonably dangerous coffee maker, which resulted in significant and painful bodily injuries from its normal, foreseeable use.

42.     Consequently, Plaintiff seeks compensatory damages resulting from the injury caused by Defendants' coffee maker as described above, which has caused the Plaintiff to suffer from serious bodily injuries, medical expenses, physical pain, mental anguish, diminished enjoyment of life, and other damages.

## VI.       CLAIMS

**COUNT I**
**STRICT LIABILITY**

43.       Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

44.       At all times material to the allegations in this Complaint, Defendants were in the business of designing, manufacturing, marketing and selling coffee makers and did design, manufacture, market and sell the subject coffee maker giving rise to the subject matter of this lawsuit.

45.       The subject coffee maker giving rise to the subject matter of this lawsuit was purchased new and was not altered, modified, or abused in any way from its as new condition.

46.       Under O.C.G.A. § 51-1-11 and other applicable case law, Defendants are strictly liable to Plaintiff for design defects because the risks inherent in the subject coffee maker's design outweigh its utility, particularly given the availability of feasible, safer alternative designs that would not impair the coffee maker's functionality. Thus, under Georgia law, the subject coffee maker is defective in its design.

47.       Under O.C.G.A. § 51-1-11 and other applicable case law, Defendants are strictly liable to Plaintiff for inadequate warning because the Defendants failed to adequately warn of the risks inherent in the subject coffee maker's design.

48.     At the time of Plaintiff injuries, Defendants' coffee makers were defective and unreasonably dangerous for use by foreseeable consumers, including Plaintiff.

49.     Defendants' coffee makers were in the same or substantially similar condition as when they left the possession of the Defendants.

50.     Plaintiff and her family did not misuse or materially alter the coffee maker.

51.     The coffee makers did not perform as safely as an ordinary consumer would have expected them to perform when used in a reasonably foreseeable way.

52.     Further, a reasonable person would conclude that the possibility and severity of harm outweighs the burden or cost of making the coffee makers reasonably safe. Specifically:

a.   The coffee makers designed, manufactured, sold, and supplied by Defendants were defectively designed and placed into the stream of commerce in a defective and unreasonably dangerous condition for consumers;

b.   The severity of the potential burn injuries resulting from the coffee makers drastically outweighs any benefit that could be derived from its normal, intended use;

c.    Defendants failed to properly market, design, manufacture, distribute, supply, and sell the coffee makers, despite having extensive knowledge that the aforementioned injuries could and did occur;

d.    Defendants failed to warn and provide adequate warnings and instructions on and/or with the coffee makers;

e.    Defendants failed to adequately test the coffee makers; and/or

f.    Defendants failed to market an economically feasible alternative design, despite the existence of economical, safer alternatives, that could have prevented the Plaintiff's injuries and damages.

53.    Despite the fact that Defendants knew or should have known that superheated water can be forcibly ejected **after** the brew process is complete, Defendants continued to market their coffee makers to the general public, and only recalled the product after the CPSC became involved.

54.    Defendants also marketed the subject coffee makers in a defective manner in that Defendants failed to effectively warn or inform consumers of the unreasonably dangerous properties of the subject coffee maker and methods by which consumers, such as the Plaintiff, could guard against and/or mitigate such dangers.

55.    Upon information and belief, but without the benefit of fact discovery and pleading in the alternative as specifically allowed by Fed R. Civ. P. 8(d), the

design and warning defects alleged above were the proximate cause of Plaintiff's injuries and damages, but those injuries and damages were or may have also been the result of manufacturing defects in the subject coffee maker which rendered the coffee maker unreasonably dangerous and not reasonably safe for its intended use, in that as fabricated and manufactured by Defendants, the lid or top of the coffee maker and its adjacent or related components were made of materials, or in such dimensions, that they lost the integrity of their connection and seal so as to allow the coffee maker's scalding hot contents to be forcibly ejected during normal, foreseeable use.

56.     Defendants are, thus, strictly liable for all injuries and damages to Plaintiff related to this incident, in an amount well in excess of the jurisdictional minimum necessary to confer jurisdiction in this Court.

## COUNT II
## NEGLIGENCE

57.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

58.     Defendants had a duty of reasonable care to design, manufacture, market, retail, and sell non-defective coffee makers that are reasonably safe for their intended uses by consumers, such as Plaintiff and her family. Defendants also had a duty to adequately warn of dangers posed by a product's design. These duties apply to the subject coffee maker at issue in this case.

15

59.     Defendants failed to exercise ordinary care in the manufacture, sale, warnings, quality assurance, quality control, distribution, advertising, promotion, sale and marketing of the subject coffee maker in that Defendants knew or should have known that said coffee makers created a high risk of unreasonable harm to the Plaintiff and consumers alike.

60.     Specifically, Defendants were negligent in the design, manufacture, advertising, warning, marketing and sale of its coffee makers in that, among other things, they:

a.  Failed to use due care in designing and manufacturing the coffee makers to avoid the aforementioned risks to individuals;

b.  Placed an unsafe product into the stream of commerce;

c.  Aggressively over-promoted and marketed its coffee makers through television, social media, and other advertising outlets;

d.  Failed to use due care in ensuring that the subject coffee maker was safe for use, and/or provided adequate warnings of its dangerous propensity, for their customers prior to selling to Plaintiff's family; and/or

e.  Were otherwise careless or negligent.

61.     Despite the fact that Defendants knew or should have known that superheated water can be forcibly ejected *after* the brew process is complete,

Defendants continued to market their coffee makers to the general public; and only recalled the product after the CPSC became involved.

62.     Defendants knew, or in the exercise of ordinary care should have known, of the means of designing, manufacturing and marketing the subject coffee maker such that the type of incident and resulting injuries and damages as described herein would be prevented. Defendants had actual knowledge of the means of designing a coffee maker that would not be inadequate and dangerous. Notwithstanding this knowledge, Defendants failed to adequately design, equip and/or manufacture the subject coffee maker.

63.     Defendants were additionally negligent in that they failed to give adequate or proper warnings or instructions, and failed to make appropriate post-sale marketing efforts to prevent known incidents, such as the one detailed herein.

64.     Defendants owed Plaintiff, as well as the public at large, the duty of reasonable care in designing, manufacturing and marketing the subject coffee maker. Defendants failed to act as an ordinary prudent manufacturer in manufacturing the subject coffee maker and violated their duties and were negligent and said negligence includes those acts and/or omissions previously described herein.

65.     Defendants are, thus, liable for their negligence for all injuries and damages to Plaintiff related to this incident, in an amount well in excess of the jurisdictional minimum necessary to confer jurisdiction in this Court.

## COUNT III
## BREACH OF EXPRESS WARRANTY

66.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

67.     Defendants expressly warranted that their coffee makers were safe and effective to members of the consuming public, including Plaintiff and her family.

68.     Members of the consuming public, including consumers such as the Plaintiff and her family, were the intended third-party beneficiaries of the warranty

69.     Defendants marketed, promoted and sold their coffee makers as a safe and convenient means of making coffee.

70.     Specifically, Defendants breached their express warranties in one or more of the following ways:

a.  The coffee makers as designed, manufactured, sold and/or supplied by the Defendants, were defectively designed and placed into the stream of commerce by Defendants in a defective and unreasonably dangerous condition;

b.  Defendants failed to warn and/or place adequate warnings and instructions on their coffee makers;

c.  Defendants failed to adequately test their coffee makers; and/or

d.  Defendants failed to provide timely and adequate post-marketing warnings and instructions after they knew the risk of injury from their coffee makers.

71.     The Plaintiff and her family used the coffee maker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of brewing coffee.

72.     Plaintiff's injuries and recoverable damages were the direct and proximate result of Defendants' breach of their express warranties.

**COUNT IV**
**BREACH OF IMPLIED WARRANTY**
**FOR A PARTICULAR PURPOSE**

73.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

74.     Defendants manufactured, supplied, and sold their coffee makers with an implied warranty that they were fit for the particular purpose of brewing coffee quickly, efficiently and safely.

75.     Members of the consuming public, including consumers such as the Plaintiff, were the intended third-party beneficiaries of the warranty.

76.     Defendants' coffee makers were not fit for the particular purpose as a safe means of making coffee, due to the unreasonable risks of bodily injury associated with their use.

77.     The Plaintiff and/or Plaintiff's family reasonably relied on Defendants' representations that its coffee makers were a quick, effective and safe means of making coffee.

78.     Defendants' breach of the implied warranty of fitness for a particular purpose was the direct and proximate cause of Plaintiff's injuries and recoverable damages.

**COUNT V**
**BREACH OF IMPLIED**
**WARRANTY OF MERCHANTABILITY**

79.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

80.     At the time Defendants marketed, distributed and sold their coffee makers to the Plaintiff in this case, Defendants warranted that their coffee makers were merchantable and fit for the ordinary purposes for which they were intended.

81.     Members of the consuming public, including consumers such as the Plaintiff, were intended third-party beneficiaries of the warranty.

82.     Defendants' coffee makers were not merchantable because they had the propensity to lead to the serious personal injuries as described herein.

83.     The Plaintiff and/or Plaintiff's family used the coffee maker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of making coffee.

84.     Defendants' breach of implied warranty of merchantability was the direct and proximate cause of Plaintiff's injury and recoverable damages.

## COUNT VI
## VIOLATION OF GEORGIA'S UNIFORM DECEPTIVE
## TRADE PRACTICES ACT

85.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

86.     The Georgia Fair Business Practices Act ("FBPA"), O.C.G.A. § 10-1-390 *et seq*., was enacted to "protect consumers and legitimate business enterprises from unfair or deceptive practices in the conduct of any trade or commerce." O.C.G.A. § 10-1-390(a).

87.     Plaintiff is a "person" within the meaning of Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA"), GA. CODE. ANN. § 10-1-371(5).

88.     The Georgia UDTPA prohibits "deceptive trade practices," which include (1) misrepresenting the "standard, quality, or grade" of goods or services; (2) representing that goods or services have "characteristics . . . uses, benefits, or quantities that they do not have"; (3) advertising "goods or services with intent not to sell them as advertised"; or (4) "engag[ing] in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." GA. CODE. ANN. § 10-1-372(a).

89.     At all times material herein, Defendants warranted and represented that the subject coffee maker was safe and free of defects in materials and workmanship

and that it possessed certain "safety mechanisms" which would prevent the harm Plaintiff incurred.

90.   Defendants   violated   the   Georgia   UDTPA   by   knowingly misrepresenting and intentionally concealing material facts regarding the quality of the subject coffee maker and the quality and characteristics of its safety, by advertising the subject coffee maker with the intent not to sell it as advertised, and engaging in misrepresentations that created a likelihood of confusion and misunderstanding as to whether the subject coffee maker was safe and free from defects.

91.   Specifically, in marketing, offering for sale, and selling the defective subject coffee maker, Defendants engaged in one or more of the unfair or deceptive acts or practices prohibited by the Georgia UDTPA, as described herein.

92.   Defendants' misrepresentations about the subject coffee maker were material to Plaintiff and her family members' decision to purchase the subject coffee maker. Defendants misrepresented, concealed, or failed to disclose the truth with the intention that Plaintiff and her family members would rely on the misrepresentations, concealments, and omissions. Had they known the truth, Plaintiff and her family members would not have purchased the subject coffee maker, or would have paid significantly less for it.

93.     In the course of their business, Defendants designed, marketed, manufactured, and sold the subject coffee maker and concealed that it was defective, as described herein, and otherwise engaged in activities with a tendency or capacity to deceive a substantial portion of the purchasing public. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of material facts with the intent that consumers would rely upon such concealment, suppression, or omission in connection with the sale of the subject coffee makers.

94.     This is shown, in part, by Defendants' delay in issuing a recall despite knowing the subject coffee maker's dangerous design and propensity to cause injury to persons prior to the date on which Plaintiff was injured.

95.     By failing to disclose and by actively concealing the dangerous defect, by marketing the subject coffee maker as safe, by denying the existence of the dangerous defect, and by failing to offer a timely and permanent solution to the defect, while presenting themselves as a reputable manufacturer that valued safety, Defendants engaged in unfair and deceptive business practices in violation of the Georgia UDTPA.

96.     Defendants unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and her family, about the

true characteristics of the defect, the safety of the subject coffee maker, and the true value of the subject coffee maker.

97.     Defendants intentionally and knowingly misrepresented material facts regarding the subject coffee maker with an intent to mislead Plaintiff and her family.

98.     Defendants knew or should have known that its conduct violated the Georgia UDTPA.

99.     As alleged above, Defendants made material statements about the safety of the subject coffee maker that were either false or misleading.

100.    Defendants owed Plaintiff and her family a duty to disclose the true nature of the subject coffee maker, the devaluation of it, and the associated safety defect because they:

> a. Possessed exclusive knowledge of the safety defect;
>
> b. Were manufacturing, selling and distributing the coffee makers throughout the United States that had a hidden defect;
>
> c. Intentionally concealed the foregoing from Plaintiff and her family;
>
> d. Knew or should have known that Plaintiff and her family could not reasonably have been expected to learn or discover the defect prior to when it injured Plaintiff.

101.    Defendants' fraudulent concealment of the defect was material to Plaintiff and her family, and a reasonable consumer would have considered it to be

important in deciding whether or not to purchase the coffee maker.

102.     Plaintiff and her family suffered ascertainable loss caused by Defendants' misrepresentations and their concealment of and failure to disclose material information. Had accurate information been disclosed, Plaintiff and her family who purchased the coffee maker either would have paid less for it or would not have purchased it at all.

103.     As a result of Defendants' unfair or deceptive acts or practices, Plaintiff has been harmed and suffered actual damages in that she incurred and will incur serious physical injury, pain, suffering, loss of opportunity, loss of family and social relationships, and medical and hospital expenses and other expenses related to the diagnosis and treatment thereof, for which the Defendants are liable.

104.     Defendants' violations present a continuing risk to Plaintiff and her family and the general public. Defendants' unlawful acts and practices complained of herein affect the public interest, including but not limited to the fact that Defendants' defective coffee maker may still be in circulation within homes today.

105.     Plaintiff seeks an order enjoining Defendants' unfair, unlawful, and/or deceptive practices; attorneys' fees; and any other just and proper relief available under the Georgia UDTPA per GA. CODE. ANN § 10-1-373.

## COUNT VII
## PUNITIVE DAMAGES

106.     Plaintiff incorporates by reference each of the allegations set forth in

this Complaint as though fully set forth herein.

107.    The acts, conduct, and omissions of Defendants, as alleged throughout this Complaint, were willful and malicious. It is unconscionable and outrageous that Defendants would risk the health, safety, and well-being of consumers, including the Plaintiff. Despite their knowledge that super-heated water could be forcibly ejected after the brew process was complete, Defendants made conscious decisions not to redesign, despite the existence of an economically feasible, safer alternative design, and not to adequately label, warn or inform the unsuspecting consuming public about the dangers associated with the use of their coffee makers. Defendants' outrageous conduct rises to the level that Plaintiff should be awarded punitive damages to deter Defendants from this type of outrageous conduct in the future, as well as to discourage other Defendants from placing profits above the safety of consumers in the United States of America and the State of Georgia.

108.    Prior to and during the manufacturing, sale, and distribution of their coffee makers, Defendants knew that said coffee makers were in a defective condition as previously described herein and knew that those who purchased and used their coffee makers, including Plaintiff, could experience severe physical, mental, and emotional injuries.

109.    Further, Defendants knew that their coffee makers presented a substantial and unreasonable risk of harm to the public, including Plaintiff, and as

such, Defendants unreasonably subjected consumers of said coffee makers to risk of serious and permanent injury from their use.

110.    Despite their knowledge, Defendants, for the purpose of enhancing their profits, knowingly and deliberately failed to remedy the known defects in their coffee makers, and failed to warn the public, including Plaintiff, of the extreme risk of injury occasioned by said defects inherent in them. Defendants intentionally proceeded with the manufacturing, sale, distribution and marketing of their coffee makers knowing these actions would expose consumers, such as the Plaintiff, to serious danger in order to advance their pecuniary interest and monetary profits; and only recalled the product after the CPSC became involved.

111.    Defendants' knowing failure to act to protect the safety of the public and its consumers, and their placement of focus on ongoing profit ahead of safety, despite actual knowledge of the dangers and failure to warn or attempt to inform or educate the public of said dangers, is clear and convincing evidence demonstrating willful misconduct, malice, fraud, wantonness, oppression and/or that entire want of care, which would raise the presumption of a conscious indifference to consequences, such that punitive (exemplary) damages are necessary to deter Defendants from repeating or continuing such unlawful and dangerous conduct in the future.

112.    Pursuant to O.C.G.A. § 51-12-5.1, Defendants are, thus, liable to

Plaintiff for punitive (exemplary) damages in an amount to be determined by the enlightened conscience of the jury, based on the clear and convincing evidence to be presented at trial, in an amount sufficient to deter Defendants and others from future similar conduct.

## VII.    DAMAGES

113.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

114.    Plaintiff, by and through her natural mother and guardian Amber Brown, seeks damages from Defendants for all past, present, and future pain and suffering resulting from her incident-related injuries, in an amount as determined by the enlightened conscience of the jury, including all past, present, and future mental and emotional pain and suffering resulting from her incident-related injuries, in amounts to be determined by the enlightened conscience of the jury based upon the evidence adduced at trial.

115.    Plaintiff, by and through her natural mother and guardian Amber Brown, seeks damages from Defendants for the loss of full enjoyment of life and disfigurement she has suffered and will continue to suffer as a proximate result of the incident and the injuries sustained therein, in an amount to be determined by the enlightened conscience of the jury based upon the evidence adduced at trial.

116.    Plaintiff, by and through her natural mother and guardian Amber

Brown, seeks a recovery of punitive damages from Defendants as described more fully above in an amount that will effectuate the societal function of punishing and deterring misconduct, but which comports with the Constitutions of the United States and the State of Georgia.

## VIII.   PRAYER FOR RELIEF

117.   WHEREFORE, Plaintiff respectfully prays for judgment against the Defendants for damages, including punitive (exemplary) damages, to which she is entitled by law, as well as all costs of this action, interest and attorneys' fees, to which she is entitled to the full extent of the law, whether arising under the common law and/or statutory law, as follows:

    a.  That the Court issue service of process to Defendants as authorized by law;

    b.  That Defendants Answer this Complaint as provided by law;

    c.  That Plaintiff has a trial by jury;

    d.  That Plaintiff recovers from Defendants for all damages, economic and non-economic, tangible and intangible, general and special, that are compensable under Georgia law that are sufficient to compensate fully and fairly for all losses proximately caused by the tortious acts and omissions of Defendants, to be determined by the enlightened conscience of the jury based upon the evidence adduced at trial;

29

e.  That punitive damages be awarded against Defendants under O.C.G.A. § 51-12-5.1 and other applicable law, and in a manner consistent with that of the U.S. and Georgia Constitutions, as set forth above;

f.  That all costs be taxed against Defendants; and

g.  That the Court award such other and further relief as it shall deem just and appropriate, including but not limited to, pre- and post judgment interest at the lawful rate, and an award of attorneys' fees on all applicable Counts as permitted by any and all applicable law.

## IX.   DEMAND FOR JURY TRIAL

118.   Plaintiff demands a trial by jury on all issues so triable.

Dated: February 14, 2024                Respectfully submitted,

/s Taylor C. Bartlett
Taylor C. Bartlett (GA Bar No. 778655)
Email: taylor@hgdlawfirm.com
**HENINGER GARRISON DAVIS, LLC**
2727 Paces Ferry Road SE
Suite 750
Atlanta, GA 30339
Telephone: (205) 326-3336
Facsimile: (205) 326-3332

Steven M. Barnett, Esq.
Law Offices of Steven M. Barnett, P.C.
4343 Shallowford Road
Suite 570
Marietta, Georgia 30062

voice: 770.998.2102
fax:    770.998.2402
email:smb@sbarnettlaw.com